### SOLLOWS v. McCANN ERICKSON, Inc.

District Court, S. D. New York.

May 9, 1939.

492

Horace Valenstein, of New York City (Max Tirschwell, of New York City, of counsel), for plaintiff.

Hayes, Nottingham & Combs, of New York City (Alvah H. Combs, of New York City, of counsel), for defendant.

BYERS, District Judge.

This is a motion to set aside a jury's verdict rendered on April 28, 1939, in favor of the plaintiff, in the sum of $56,420.88.

The action is on an alleged oral contract, and the plaintiff undertook to prove that an advertising concept of hers was imparted by her to the defendant, upon the understanding that, if it were to be approved for an advertising campaign to be conducted by defendant for a cigarette manufacturer, the defendant would pay her five per cent. of such manufacturer's total advertising appropriation based thereon.

The interview at which this understanding is said to have been reached took place on May 5, 1935. The plaintiff's evidence should be viewed in its most favorable aspect, and her version of what took place, as above outlined, is accepted for the purposes of this motion.

She has shown that on April 24, 1936, the defendant entered into an advertising contract with the Axton-Fisher Tobacco Company of Louisville, Kentucky, and that the sum of $1,128,417.70 had been expended by the latter from the date of the contract to April 25, 1939, in its campaign to promote the sales of its 10-cent brand of cigarettes known as "Twenty Grand"; five per cent. of that sum is the amount for which the jury rendered its verdict.

The only question now presented is whether the plaintiff's concept is shown to have been laid before the Axton-Fisher Company and to have induced the latter to entrust its advertising campaign to the defendant.

The plaintiff was her only witness, and her testimony is that during the month of April, 1936, she learned through trade circles that the defendant was about to obtain the said contract, and that, in a telephone conversation with Mr. Hill, the defendant's Vice-President, with whom she had her dealings on May 5, 1935, she congratulated him on the prospects of defendant's success, and that he told her that it had been her idea that landed the business; that she said to him: "We haven't gotten our contract straight", and he replied that a great many details had to be arranged, and then the contract between the plaintiff and the defendant would be signed. That later in the month (and presumably after April 24th) she telephoned Mr. Hill and again congratulated him, this time on having closed the contract; that he said that the defendant "had landed a growing little fish", and that she said: "Where are we going to stand with our contract?" and he replied to the effect that the affairs of the Axton-Fisher Company were being reorganized and it was impossible to tell what the appropriation for advertising would be and, until the defendant knew what it was going to get, the amount payable to the plaintiff could not be fixed, and he suggested that she wait until the actual figures were established.

It is significant that the plaintiff had no further contact with the defendant until eleven months later or during March, 1937, when she called in person at the defendant's office with an attorney and had an interview with another Vice-President of the defendant, named Palmer, at which the Vice-President Hill was present; the latter denied having made such an agreement as the plaintiff asserted, and in response to her attorney's questions as to whether the plaintiff's idea had been used in securing the Axton-Fisher contract, she averred that Hill said: "You can't prove a thing."

In December of 1936, the defendant returned the plaintiff's embodiment of her idea, which consisted of certain clippings and illustrations which rather crudely, but perhaps clearly, set forth her concept. The return was by mail and was not successful because of the plaintiff's removal from the address on the wrapper, but it was finally accomplished by mail during the following February.

The plaintiff's idea, as she explained it, was roughly this: In the daily life of the average person, it is necessary to face ordeals of greater or less import, which creates subjective tension, and that, in turn, can be relieved by smoking a cigarette before making the decision or doing the thing which is incident to the ordeal.

According to the plaintiff, at the original interview of May 5, 1935, Hill professed to be greatly attracted by this suggestion, and assured her that, if the same idea was not already in the files of his company, he would undertake to secure the approval of all officers having authority, and this later was accomplished; she at that time insisted upon a clear written agreement concerning her compensation, and said that, if one of the four largest cigarette manufacturers could be induced to approve her suggestion and exploit it, she would accept two per cent. of the advertising appropriation of that company; while, if a smaller or less prominent enterprise were to do that, she would accept five per cent.

This, the defendant categorically denies, but the conflict is not presently material because the plaintiff's own testimony is that Hill refused to make a written agreement with her at that time, and said: "Your contract won't mean anything until we get the business." Clearly this was the plaintiff's understanding, so that even if her version of the negotiations were to be accepted, she would still have to demonstrate that the defendant procured the business upon the basis of her concept, to make out her cause of action, and the burden of proof rested upon her so to do.

There is no evidence in the case, aside from the telephone conversations of April, 1936, above referred to, which tends to establish her cause of action. At most, if her version be accepted, what Hill said would be deemed an admission by the defendant, which is not proof of the fact of the contract, which she undertook to establish.

With respect to the evidential status of admissions, the Circuit Court of Appeals for this Circuit has recently said in Napier v. Bossard, 2 Cir., 102 F.2d 467, at page 468:

"* * * admissions are competent, not as testimony at all, but because they are inconsistent with the position taken by the party who made them (Wigmore § 1048) * * *."

It is necessary therefore that the other evidence in the case be studied to determine whether it supports the plaintiff's cause. That evidence consists in correspondence between these parties, and letters passing between the defendant and the Axton-Fisher Company with reference to the nature of the advertising actually displayed, and copies of that advertising matter.

If there were present therein any indication that the plaintiff's concept was drawn to the attention of the Axton-Fisher Company, or embodied in any of the advertising approved by it, there would be evidence tending to establish the plaintiff's claim; absence of such a showing would tend to disprove the plaintiff's assertion, and a careful study of these exhibits has convinced the Court that there is none.

The jury was perhaps misled by the correspondence between the plaintiff and the defendant having to do with contemplated efforts to sell the idea to the Lorillard Company, the manufacturer of Old Gold cigarettes. Clearly Hill had such a purpose, but he never carried it into effect, for reasons that it is unnecessary to discuss because they were not clearly developed.

The entire campaign, as outlined for the Axton-Fisher Company and as carried into effect, makes no mention of nor does it embody, directly or indirectly, the plaintiff's idea.

The latter would be appropriate to promote an abstraction, i. e., the smoking of cigarettes (assuming its power to persuade, or to provide an easy excuse for cigarette smoking) and would have no special reference to the requirements of building up the Axton-Fisher distribution.

As to the latter, the testimony is quite convincing that what was needed was an assurance to the smoking public that a cigarette selling for ten cents a package was composed of as good tobacco as higher priced products; and that the saving effected by the consumer was more important than the natural reluctance, if there is any, to a change in the smoking habits of a user from a higher to a lower priced commodity.

The plaintiff's idea was not calculated to meet that special requirement, and therefore it is not a cause for wonder that the advertising matter, as contained in defendant's Exhibit D, fails to portray directly or indirectly the plaintiff's concept.

It is urged on this motion that the plaintiff was entitled to the compensation she sues for, if her concept was in fact ex-

hibited to the Axton-Fisher Company, whether found to be adaptable to its advertising requirements or not.

This argument is a fallacy. The obligation of the defendant to pay the plaintiff would arise only if she made an affirmative contribution to the defendant's negotiation of an advertising contract to be secured by it from a manufacturer.

■ The rejection by the latter of any number of ideas believed to be unsuitable would not result in defendant's securing a contract. This seems too plain to require discussion.

The conduct of the plaintiff was not consistent with an assertion by her in April of 1936, that the defendant's obligation to remunerate her came into existence as the result of the placing of the Axton-Fisher contract.

She made no request for either the payment of a fixed sum as she had written to suggest on October 16, 1935 (Ex. 8), nor did she insist that a written contract be drawn, calling for the payment to her of any percentage—five or otherwise—of whatever the Axton-Fisher appropriation should turn out to be.

This continued reticence is the more difficult to reconcile with a then understanding upon her part of the defendant's contractual duty towards her which she now asserts, when considered in connection with her Exhibit 13, a letter written on April 7, 1936, to Hill, in which she explains having placed her affairs in the hands of one Pemberton—presumably a lawyer. If during that month she learned what she says she did from Hill, and was already consulting an attorney, it would seem that her assertion of a contractual hold upon the defendant, based upon the Axton-Fisher account, would have been prompt and vigorous.

Incidentally, Pemberton was not called as a witness.

Plaintiff's Exhibit 17 is a letter, dated February 15, 1937 (signed by Hill) reporting her telephone conversation with the Vice-President Palmer in which she is quoted as saying that "layouts" of her idea had been prepared at Hill's direction, and he denied that such had been done. As to that incident, her testimony was that toward the end of June, 1935, she had caught a glimpse of sketches which were based upon her idea, for Old Gold cigarettes.

That was nearly ten months before the Axton-Fisher contract was made, and if she referred to that incident in speaking to Palmer in February of 1937, it was the Old Gold advertising which was then in her mind, and not the Axton-Fisher contract of April, 1936.

The plaintiff's case, as a whole, is more consistent with a recently formed purpose to capitalize the Axton-Fisher contract, than with an earlier recognition of its availability to her as a cause of action against the defendant.

The case was submitted to the jury in the belief that the evidence as a whole should be consulted with a view to determining whether the plaintiff had made out her case. The evidence was received while the trial was under way, and of course did not afford the Court an opportunity to analyze and study the exhibits as has been possible in the consideration of this motion.

It is now apparent to the Court that the verdict rendered for the plaintiff is not supported by the evidence in the plaintiff's own case. Nothing occurred in the presentation of the defendant's evidence to supply the deficiency, and hence the motion is granted to set aside the verdict, and a new trial will be ordered.

Settle order.